All right, if the parties would step forward, please identify yourself for the record. At all times, keep your voice up because they're being recorded for the Apple Live. And I believe you have 15 minutes each, and if the Appalachian wants to save time for rebuttal, please let us know. Thank you. Sydney Warda for Mr. Lawrence Barlow. And I'm going to ask you to keep your voice up a little higher, all right? Okay.  Good morning, Your Honors. Andre Milton for the people of the state of Illinois. Thank you. Thank you. Thank you. Whenever you're ready, Counsel, you can proceed, sir. Good morning. May it please the Court. I'd like to focus on Mr. Barlow's request for a new trial for counsel's failure to request the instruction for simple robbery, unless Your Honors have questions on the sentencing issues. I don't. I don't. Okay. The aggravating factor in Mr. Barlow's charge for aggravated robbery was that he indicated he had a weapon. The jury, of course, heard the instruction for aggravated robbery, but they were not instructed on simple robbery because defense counsel didn't request that instruction. Do you know, did they ever, did counsel ever discuss that option with his client? I don't know that, and it's certainly not clear from the record that it was counsel's intention to employ that strategy. What do you mean, the lesser included offense? Mm-hmm. Okay. There only needs to be very slight evidence to justify giving a jury instruction, generally speaking. And here there was the slight evidence needed to justify the simple robbery instruction. The State, in its briefing before this Court, doesn't appear to contest that there was the slight evidence needed to justify the jury hearing about simple robbery. Instead, it's the State's position that counsel was employing the all-or-nothing strategy here for Mr. Barlow's benefit, that it You know, are you arguing that that wasn't a proper strategy here? I mean, he didn't have a weapon, right? There didn't appear to be any threat from the video. I mean, I don't know, we didn't do that audio, so we couldn't tell. But just from the video itself, it didn't seem like there was anything of a threat. You know, the gentleman seemed very calm, cool, handed over the money, and then when he got stopped, there was no weapon in his vehicle and no money in the vehicle. So, wouldn't that seem like a reasonable approach to go for all-or-nothing? Our first contention here is that counsel was not employing that strategy at all. Counsel was not going for the all-or-nothing strategy, as demonstrated by his closing argument. In counsel's closing argument, he said that Mr. Barlow could not be seen in the video conclusively putting his hand inside of his pocket to indicate he had a weapon. Counsel argued that Mr. Barlow was gesturing with his hand, holding a phone with his hand. And counsel also highlighted, as you said, the calmness of the situation. This was the thrust of counsel's argument, and it demonstrated that counsel found it strategically beneficial to focus on the aggravating element of Mr. Barlow's charge here. But after focusing on that aggravating element, counsel's failure then to request the corresponding jury instruction for the lesser-included offense prevented the jury from rendering a verdict that was consistent with what was trial counsel's only viable argument in closing. And so it's our position that there's really no conceivable trial strategy that would involve all-or-nothing at all. Well, I mean, I've seen so many cases. I was a 2060 for 20 years. Eighty percent of the lawyers who had a lesser-included took the shot at all-or-nothing at all. And some of them, because you couldn't prove the murder, you might have been able to prove a second degree, but you didn't ask for it. And their clients walked because the state couldn't prove the intent. So I'm just wondering why you're saying it's a poor strategy to, what is it, there's a phrase where you take a chance. Roll the dice. That's the phrase. You roll the dice to get all-or-nothing at all. And quite often when you can't prove the aggravating factor, they've got to say not guilty. Why give them the opportunity for the lower class and get your client convicted for something that they're not charged with? Sure, Your Honor. There are many situations in which an all-or-nothing strategy may be beneficial for a client. Again, our first position is that counsel was not employing that strategy here based on his closing argument. The state presented videos of Mr. Barlow in the store interacting with the store clerk. There was no question that it was Mr. Barlow in the videos. And based on that evidence, trial counsel saw fit to focus on the aggravating element. I know. That's what I'm saying. He's all-or-nothing. He's saying all-or-nothing. If you can't prove that he threatened them with a weapon, you can't convict them of aggravated robbery and there's nothing left. You've got to let them go. In these circumstances, the all-or-nothing strategy is viable in many cases where the evidence maybe isn't that strong against the defendant. The evidence may not be. That may be what the lawyer felt. The evidence is not that strong. You can't see him reaching over to this side. You don't hear him saying, I'm going to shoot you. Everybody's calm like they're getting ready to leave the store and go have a Coke. I was going to say a drink, but I suppressed that. I'm just, you're asking us to criticize a lawyer for doing what they think was best for their client and giving the defendant a shot when the lawyer and he couldn't determine this is a good strategy. The state doesn't have anything to show that he was threatened. He doesn't act like he was threatened. I mean, if somebody reached over and said, I'm going to shoot you, you know, you think there's some response. And the tape doesn't show a response. So if counsel was going for the all-or-nothing strategy, reasonable representation would involve arguing against all the elements, regardless of whether counsel thought that the weakest proof was on the aggravating element. However, here, we don't see counsel focus much attention, if any at all, on the other elements of the offense. And I understand what your perspective is. He doesn't have the lesser included. However, I think here what that shows in counsel's argument is that he was not going for that strategy. That his failure to request this lesser included instruction was an omission from his strategy to focus on the fact that Mr. Barlow couldn't be proved of aggravated robbery. Generally, this lesser included offense, it provides an important third option for a jury. And so in a case where a jury may find that a defendant is plainly guilty of something, the lesser included instruction provides this option, even if the jury maybe doesn't feel that the state has proved all of the elements, as you said. You just argued for the reason why, as a defense attorney, I wouldn't give the lesser included. He must be guilty of something, but I don't have that something here, so I got to let him go. In many circumstances, though, Your Honor, when the jury is pressed in that way, they say, you know, I think that the defendant did something, but I'm not really sure the state proved every issue. Many times the jury resolves that conflict in favor of conviction. And despite the misgivings it may have had on the state's proof of, you know, the aggravating element here, and that's what happened here. The jury was left with only two options, aggravated robbery or outright acquittal. Outright acquittal here for Mr. Barlow was improbable based on what the jury saw and based on counsel's focus only on the fact that Mr. Barlow couldn't be seen reaching his hand into his jacket to indicate he was armed. So what else should counsel have argued here? If you don't think counsel's defense is all or nothing was not what Rudy was really implementing, then I shouldn't have argued here. Well, if counsel was employing the all or nothing strategy, what should he have argued? If he wasn't. If he wasn't. He should have requested the lesser included instruction. Well, he asked you what should he argue on the robbery count for that. If you didn't want him to focus on the aggravating factor, which he clearly did, and you wanted him to focus on the elements of the robbery, what could he have argued? There's not a lot. And I think that speaks to the fact that counsel here recognized that he didn't have a great defense for the other elements of robbery. And because of that, he focused on the aggravating factor. And because of that, he should have requested the lesser included instruction. If he was really implementing an all or nothing strategy, there needs to be at least statements regarding the other elements of proof. Otherwise, again, the jury is left watching this video where Mr. Barlow is interacting with the store clerk, hearing the store clerk describe the interaction that Mr. Barlow took money from him, and then the jury is expected to acquit. It's just, it's improbable. And counsel appeared to recognize that in his closing arguments, but then didn't perfect his strategy by requesting the instruction that would have allowed the jury to conform its decision to counsel's argument. And because of this, Mr. Barlow lost out on the opportunity to be found guilty of a lesser class of felony, essentially because of counsel's oversight in not requesting this instruction. And what about the sentencing? Well, generally speaking, looking at the surveillance video of what took place in this interaction and comparing it to the 20 years that Mr. Barlow received, it is quite shocking, the amount of years. Mr. Barlow didn't touch anyone. As Your Honor's note, it was calm. Mr. Barlow didn't have a gun or any other weapon. So the most important consideration for a trial court in handing down a verdict is the seriousness of the offense, and Mr. Barlow's conduct was truly the bare minimum of what an aggravated robbery is. And the record here demonstrates that the trial court punished Mr. Barlow for going to trial. When Mr. Barlow rejected the plea deal, the trial court warned him he was doubling down and rolling the dice on or by not taking the plea. And then the trial court carried out its threat essentially by then sentencing Mr. Barlow to double the amount of time that the plea agreement was for. You think the judge was saying he was going to double his sentence if he didn't take the offer? I'm not saying that. Whether a trial tax is imposed is determined by trial court statements and reasonable inferences that we can take from those. And here, the trial court told Mr. Barlow he was doubling down. And then it's sentencing. That the judge was doubling down or that the defendant was doubling down? I'm sorry, that Mr. Barlow was doubling down. And then at sentencing, the trial court gave him double the amount of time. The state saw fit to sentence him to recommend 10 years. Nothing was adduced at trial regarding Mr. Barlow's conduct or his background that justified such a great increase. The court knew the salient facts from the indictment. The court knew about Mr. Barlow's background. And still, this great disparity of time. Inferentially, it's a trial tax. So, but that wasn't the only manner in which the trial court didn't focus on the constitutional mandate of rehabilitation and the seriousness of the offense. Mr. Barlow had strong mitigating evidence in favor. He has strong interpersonal relationships. He admitted and apologized for what he did. He recognized that drug abuse was the catalyst behind this and many other offenses and sought treatment. Then the trial court focused heavily on his background. Even though Mr. Barlow was already being sentenced as a Class X offender. So, in essence, the legislature has already taken into consideration that criminal background. But — What was the sentencing range? Sorry? What was the sentencing range? I have a cold, so I put a cough drop on the map. I'm sorry. What was the sentencing range? As a Class X, I believe it was 6 to 30, but I'm not positive on that. And — How many prior felony convictions did he have? A number. Oh, I know it was a number. A number of them. I thought it was a number. Your Honor, I believe — It could be like a lifetime, basically, of crime. There's nothing stopping him. And I think his last sentence may have been 14 years in the penitentiary. And then he's doing it again. Your Honor, so I think that that — I realize that that cuts both ways in terms of a drug abuse being the catalyst for such conduct. But I think here the trial court saw fit to rely heavily on Mr. Barlow's background, but then didn't consider at all the fact that the background that he has was due to the drug abuse. So while drug abuse is not necessarily always a mitigating factor, here the trial court failed to consider all the evidence before it with regard to how Mr. Barlow has acquired such a history. I think the trial — and I have to go back and read, but I think the trial judge specifically said he considered all the factors in aggravation and mitigation. I mean, to say that he — you're just assuming he didn't, or that he didn't give the weight that you think he should have given to the mitigating factors. Yes. Yes. However, I'm not sure the perfunctory statement that the trial court has considered everything, when balanced on the substantive statements that the trial court made, is really that great evidence that the trial court was considering all the important factors of mitigation before it. And again, if the trial court wanted to focus on Mr. Barlow's background, it wasn't in a vacuum. The trial court had before it information about why this pattern existed, and didn't give it the proper weight. So you're asking us to re-weigh the factors that the judge took. That's what you're — I mean, that's what you're saying, that we should re-weigh the factors that the judge took into consideration in fashioning what he thought was the appropriate sentence. In part, yes. However, the trial court also imposed a trial tax, which can alone be reason enough to change the defendant's sentence. On a whole, there's enough here that showed that the trial court didn't hand down a sentence that was focused on what the Constitution says it should be focused on, the seriousness of the offense and concerns about the rehabilitative potential of the defendant. And so there's enough there that this court should reduce his sentence. Anything on the mandatory supervising — excuse me, supervised release issue? I think it's agreed to, so. As long as this court agrees.  I think it is. Only if two sides agree. We rarely disagree with both sides. Thank you. Thank you. Thank you. Good morning, Your Honor, and may it please the court, counsel. My name is Andre Melton, and I represent the people of the state of Illinois. I plan to focus most of my argument today on prejudice, but I just wanted to talk on the all-or-nothing strategy as you guys went back and forth to counsel on it. I just want to say trial counsel's strategy, all-or-nothing strategy here, was reasonable. Defendant made clear in his arrest that he didn't want to go back to jail. He told the police that they would have to kill him because he didn't want to go back to jail. And for a defendant not to go to jail in this case, there was only one reasonable strategy, and that's to get him found not guilty at trial. As counsel points out, there's really nothing testing the simple robbery elements in this case. It's pretty obvious. He went into the store. He said something to the clerk. He received money, and he left. Well, given the factors there that there was no weapon found and no money found, so if counsel would have gone for the lesser-included offense, the outcome might not necessarily have been incarceration. It would have been. That's a hypothetical, but still. If he would have been found guilty of the lesser-included? Yes. In this case, it's practically irrelevant because he would have faced Class X sentencing as an habitual offender, whether he was convicted of aggravated robbery in this case or simple robbery. Both Class I and II are both eligible for the Class X sentencing. So even if he was to be found guilty of the simple robbery, he could still face Class X sentencing. As Justice Lankin said, it wouldn't be a very sound strategy to get your defendant convicted of a lesser offense and still face the same sentencing. And that goes to both reasonableness of the all-or-nothing strategy and that he wouldn't have been prejudiced in this case by the omission because no reasonable jury would have acquitted him on the greater charge, given the strength of the evidence in this case anyways. So the only reasonable strategy here for him to avoid jail time was to get found not guilty on the aggravated robbery, and that was trial counsel's strategy. Trial counsel focused on there was no audio recording of the video inside the 7-Eleven to support what defendant told the victim. So I just want to say it was reasonable, but also, again, defendant could not have been prejudiced as there's no reasonable probability a jury would have acquitted him given the strength of evidence in this case as to the aggravated factor. And that includes the victim testifying that defendant came into the store, asked him where the juice was, defendant went and got the juice, came back up to the front of the 7-Eleven, leaned over and said, hand me over everything or else I'll shoot. He said this, and it's, I would say, obvious on the video. He places his right hand under the left side of his jacket and leans forward. That interaction leads the store clerk to give over money, and defendant leaves. So back to the surveillance video. It shows him concealing his hand. It shows him leaning over. It shows him taking money. It shows him leaving. Immediately after defendant leaves the store, the victim in this case calls 911, tells the dispatcher that he had just been robbed and that the defendant threatened to shoot him during the robbery. The 911 responder asks, did he have a weapon? And the victim testifies, no, but he was concealing something and told me and made me hand over money. There's really no ambiguity given the evidence in this case. It's kind of a textbook aggravated robbery case. Faced with all this evidence, the notion that a simple robbery conviction was reasonably probable is speculative at best. As defendant says in his brief on page 15, this may have, the lesser-included instruction may have changed the outcome. And in this case, the sentence, it likely would have changed the outcome in this case, and the record just doesn't support that. And I just want to again reiterate that even had defendant been convicted of the lesser-included, he still would have faced class X sentencing. So it's both legally irrelevant and practically irrelevant. I didn't realize, I'm certainly going to have to go back and look. I didn't realize he was class X eligible no matter. I believe it was, sorry to interrupt you. I have to make sure that's correct because then an all or nothing at all strategy would be the only strategy. And I believe the class X sentencing has both class, if they've been previously convicted of a certain number of class 1 or 2 felonies, they're subject to the class X sentencing. And that's 730 NICLS 5-5. Slow that down. Slow it down. I'm going to write that and look it up. It's 730 ILCS 5 forward slash 5 dash 4.5 dash 95. And it was 6-30 just on the class X sentencing. I know that came up earlier. So if there's no questions on either the prejudice element or the reasonableness of counsel, I'll move on to the sentencing. The sentence here was reasonable. Defendant received 20 years well within the 6-30 class X sentencing guidelines. The record demonstrates careful consideration of the sentencing factors, including the offense here, defendant's background, which he's in age. He's older at this point. He's in his 50s. He has 10 prior felonies, 5 prior aggravated robbery convictions. And just because I know Justice Lincoln brought it up, his last sentence in 2015 was 13 years for an aggravated robbery. Before that, 14 years for an aggravated robbery. At the same time, he got 15 years for a separate aggravated robbery. In 97, another aggravated robbery, which he got 8 years. And in 97, 11 years for another aggravated robbery. So this has been a reoccurring theme in his life. The court notices that it's sad that he's been doing this for a long time and he hasn't got the help that he needed. But overall, his rehabilitative potential compared to his demonstrated history of doing this over and over and over again justifies the sentence in this case. What about the issue that there is that the judge focused too much on the criminal history here instead of other factors? I think the criminal history is part and parcel of the sentence in this case. To some extent, aggravated robberies, if there's a scale, this is on maybe the lower end. But the defendant has done this over and over and over and over again. And I don't think the court overly focused on it. I think the court put it in context with his drug issues, his age. So I don't necessarily think the court overemphasizes it. But I think it was an important consideration in someone who has done this 5 prior times and 10 times before. I think everyone believes in a second chance. Most people believe in third chances. Some people believe in fourth chances. And I think it goes less and less as we get from there. And Mr. Barlow was on his sixth chance here. And that just counts as aggravated robbery. It's not other prior felonies. I don't know about the issue of the age. Because of his age, 20 years is kind of harsh. I think, again, it comes in context with 2015 when he was in his 40s. You'd hope that he would have taken it to heart when he got a 13-year sentence. Ten years before that, when he was in his 30s, you would think the 14-year sentence and the 15-and-a-half-year sentence would have, especially because of their older ages. So I think it's the entirety of the record in this case shows that this was a sentence that was well within the judge's discretion and is somewhat in the mean, in the middle of, between 6 and 30, to some degree. But, again, he had prior convictions that are nearing 20. So I think the age and his criminal past were part and parcel with the entire sentence. But I think the court, those were the things that were most important to the sentencing factors in this case, that had been doing this for a long time. He really goes to prison for a little bit, comes out, does it again, goes to prison, gets out. And I think the court highlights that. That's unfortunate, but that he hadn't learned his lesson. There was some talk about a trial tax. I should say, Justice Lincoln mentioned rolling the dice before it was brought up in the record here. It's not to, and you have to put the entirety of the comments within the record. The judge, in advising him prior to trial, that he was denying a plea and that he understood his rights to that and that he was going to go to trial, the court mentioned that he was rolling the dice or doubling it down. And I think that was just to impress upon him that you've had this deal, it's going away, and you're looking at more time now, which is something the defendant should be advised for when he's going to trial. So I don't think those specific comments within the entire context of the record indicate that it was clearly evident this sentence was only based on the defendant's right to exercise his right to go to trial. And if there's no other questions, I would just like to ask the court to affirm the defendant's conviction in his sentence and remand it for, to fix the NSR sentence. Thank you. Thank you very much. Thank you. We will take this case under advisement.